IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY CARROLL, | : | CIVIL NO. 3:CV-05-0692 |
| Petitioner, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, ET AL., | : | |
| Respondents | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM AND ORDER**

Petitioner, Rodney Carroll ("Carroll"), an inmate presently incarcerated in the State Correctional Institution at Graterford, Graterford, Pennsylvania, filed the instant petition for writ of habeas corpus on April 6, 2005, pursuant to 28 U.S.C. §2254, attacking a conviction imposed by the Court of Common Pleas for Luzerne County.[1] Following review of the petition and the response, the Court found it appropriate to raise *sua sponte* whether the statute of limitations bars consideration of the petition, See United States v. Bendolph, 409 F.3d 155 (3d Cir. 2005), and, afforded the parties the opportunity to address the issue. Respondents supplemental response was filed on September 12, 2005. The petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

---

[1] In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999) and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner was advised that he can (1) have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petitions, absent certification by the court of appeals, or (2) withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act. Petitioner has chosen to have his petition ruled on as filed. (Doc. 5).

## I. **Procedural Background**

On October 17, 1997, Carroll was sentenced with an aggregate sentence of twenty to forty years imprisonment followed by a twenty-year period of probation. Carroll appealed the judgment of sentence (Doc. 13-2, p. 3), and, on October 8, 1998, the Superior Court affirmed. (Doc. 13-10, pp. 1-11). Carroll failed to file a timely petition for allowance of appeal. On or about August 6, 1999, he attempted to file a petition for allowance of appeal *nunc pro tunc*. The Supreme Court denied the petition on or about January 2000.

On September 27, 1999, Carroll filed a petition for post conviction relief pursuant to the Post Conviction Relief Act ("PCRA"). 42 PA. CONS. STAT. § 9541, *et seq.* He amended the petition on January 27, 2003, and again on February 13, 2003. (Doc. 13-2, p. 4). In the court order addressing the timeliness of the petition (Doc. 12), although the court stated that Carroll first filed his PCRA petition on January 27, 2003, the Luzerne Court of Common Pleas docket sheet, which was provided by respondents in response to the order, clearly indicates that Carroll initially filed his PCRA petition on September 27, 1999, and amended it in January 2003. (Doc. 13-2, p. 4). The timeliness of the petition is confirmed in the superior court's order denying his appeal. (Doc. 13-20, p. 7). Thus, any issue of timeliness is resolved in favor of Carroll as the filing of the petition served to toll the running of the statute of limitations. See 28 U.S.C. §2244(d)(2) (In computing the one year period, the time during which a properly filed application for state post-conviction or other collateral review shall not be counted toward any period of limitation).

The court of common pleas denied the amended petition on March 30, 2003. (Doc.

13-14). Carroll appealed to the Superior Court, which affirmed on July 13, 2004. (Doc. 13-20). A petition for allowance of appeal was subsequently filed. The Supreme Court denied the petition, on March 15, 2005. (Doc. 13-23, p. 3).

The present petition was filed on April 6, 2005. Carroll alleges that the following points of error violated his due process and equal protection rights:

1. State courts violated his rights when they allowed an innocent man to be found guilty;

2. Trial counsel was ineffective in failing to request a mistrial;

3. Prosecutor committed misconduct by misleading the jury with regard to a witness; and,

4. State courts improperly admitted inflammatory photographs.

## II. Factual Background

The facts, as determined by the Pennsylvania Superior Court during the PCRA proceedings, are as follows:

> Paul Scavone and his two brothers, Vincent and Christopher, own J&S Sporting Goods, a store in a strip mall on Route 309 in Wilkes-Barre. On December 19, 1996, Paul and Vincent were working in the store. At approximately 3:00 p.m., Appellant entered the store with another man, went to the showcase where handguns were displayed, and inquired about ammunition. Appellant purchased some ammunition, and in accordance with state and federal law, provided identification. The store cash register receipt evidencing the sale of the .25 caliber ammunition was introduced into evidence. Appellant and his companion returned to the gun display and then exited the store.
>
> At approximately 7:10 p.m., Appellant returned and asked about purchasing a Ruger handgun. Paul informed him that he would need a Pennsylvania driver's license or a concealed weapon permit in order to purchase the gun. Appellant told Paul that he had the necessary paperwork

3

and that he would be "right back." N.T. Trial 9/9/97, at 46. Appellant returned approximately ten minutes later with Lamar Banks. Paul, Lamar and Appellant approached the gun showcase, and Appellant asked to see the Ruger handgun. Paul started to retrieve the key to the case when Lamar said, "Don't bother with that. We're not here for that. Let's get going." Id. at 47. Paul stated that at that point, Appellant pulled a "gun out of his pocket and pointed it to my head and told me to put my f___ing hands up, or he'll blow my head off." Id. Appellant had a small, .25 caliber semiautomatic handgun, pointed at Paul's head.

After Paul put his hands in the air, Appellant pointed the gun at Vincent and a customer in the store, Robert Griffiths, and told them to "put their hands up or he'll shoot them right in the f___ ing head." Id. Appellant continued to make the threat throughout the robbery and on a number of occasions placed the gun against Paul's head while making the threat.

Appellant then told the three victims to go into a storage room in the back of the store. While in the room, Paul heard the showcase being opened and an alarm sounded that indicates a person has opened the front door. Another person then entered the storage room. Appellant stood over Paul while the unidentified third perpetrator, who wore surgical gloves, tied Paul's hands with duct tape. The unidentified third man also tied and bound Mr. Griffiths and Vincent.

At some point, Vincent's girlfriend, Diane Butchko, entered the store. Appellant turned to look, pointed the gun at her, and said, "Come on, bitch, don't even think about it, come into the back." Id. at 54. Appellant took money from Ms. Butchko's pocket and demanded money from Paul, who told him that his cash was in the cash register. Appellant then noticed that there was a Japanese bolt action rifle leaning between some boxes, grabbed the rifle, and said that he was taking it with him. All four victims were placed on the floor, bound, and gagged. When Appellant started to leave the storage room, he told them not to "get up or not to move or else he would shoot [them] in the head." Id. at 56.

After Appellant left the room, Paul heard one of the perpetrators say to him, "We got to get going." Id. at 57. Appellant responded, "You can't leave all these handguns in these showcases." Id. At that point, Paul heard two "loud bang[s]," and then "scuffling," and then nothing. Id. at 57, 58. The three assailants took twenty-four handguns worth approximately $8,380 and cash in the amount of $2,132.78.

The four victims freed themselves and telephoned police.

## III. Discussion

### A. Habeas exhaustion requirements

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). However, habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Id.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to

exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

6

Carroll failed to present to Pennsylvania's highest court the claim that the courts "allowed an innocent man be found guilty of crimes the Commonwealth knows he did not commit." (Doc. 1-2, p. 3). Procedural rules bar him from pursuing this issue in state court.[2] Carroll has procedurally defaulted this claim, and the exceptions to procedural default do not apply in this case. He has not averred cause for, or prejudice by the default. Nor has he demonstrated his actual innocence such that a lack of review by the court would constitute a fundamental miscarriage of justice. See McCandless, 172 F.3d at 260. Consequently, Carroll is precluded from pursuing federal habeas corpus relief with regard to these issues.

However, his remaining claims were properly exhausted for federal habeas corpus purposes and will be addressed on their merits. (See Docs. 13-10, 13-20).

---

[2]The time period for filing a second PCRA has expired. See 42 PA. CONS. STAT. § 9545(b)(1) (setting for a one year limitations period). Carroll raises no argument, and the record suggests no possibility, that his claims fall within an exception to the limitations period for filing a petition under the PCRA. See 42 PA. CONS. STAT. §9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and retroactively applied by the Supreme Court).

B. <u>Merits of Habeas Claims</u>

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was "contrary to" federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." <u>Id.</u> Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. <u>Id.</u>

Carroll presents three separate claims, each of which will be addressed on the merits.

### 1. *Ineffective Assistance of Trial Counsel*

To sustain a claim for ineffective assistance of counsel, a petitioner must show that

counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984).[3] In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996). When challenging counsel's effectiveness in the context of a guilty plea, the petitioner, in order to satisfy Strickland's prejudice requirement, "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Carroll claims that trial counsel was ineffective in his failure to request a mistrial when the Commonwealth's witness, Lamar Banks ("Banks"), refused to testify contrary to the prosecution's representation in the opening statement that Banks would testify. The Pennsylvania Superior Court considered this issue on direct appeal and recited the standard of review as follows:

> In order to establish an ineffective assistance of counsel claim, the appellant must meet [a] three-prong test. . . . Appellant must establish that the issue underlying the claim of ineffectiveness has merit. Second, appellant must establish that the course of action or inaction chosen by counsel had no reasonable basis in advancing appellant's interests. Third, appellant must establish that he suffered prejudice as a result of the counsel's action or

---

[3] The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

9

> inaction. Prejudice in this context has been defined to mean that appellant must establish that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different. Appellant bears the burden of proving all three prongs of this standard. Moreover, the law in Pennsylvania presumes that counsel was effective.

(Doc. 13-10, pp. 6, 7)(quoting Commonwealth v. Crawley, 663 A.2d 676 (1995). In considering the claim, the Superior Court evaluated the prosecutor's opening statement and noted that Carroll did not reveal how he was prejudiced by his counsel's inaction.[4] (Doc. 13-10, p. 7). Specifically, the superior court stated that:

> We fail to see how Appellant was prejudiced after Banks refused to testify at Appellant's trial. Four robbery victims testified that Appellant was one of the robbers and that he trained a gun on them. Additionally, Latonya Banks testified that Appellant participated in the planning and execution of the robbery. If Mr. Banks had testified, he surely would have pointed a finger at Appellant and outlined his participation in the robbery; Mr. Banks' testimony would have been merely cumulative of the testimony of others, and Appellant is fortunate that Banks did not testify against him.

(Id.) The superior court also noted that the jury was explicitly instructed that the prosecutor's "opening statement is not evidence. It is really what he hopes the evidence will be." (Id.) (citing N.T., 9/3/97 at 8).

Although the state court did not cite to Strickland, the case law relied upon by the superior court contained the same standard of review as the governing Supreme Court standard. There is no indication that the state courts unreasonably applied established federal law in reaching their decision, or that the state court decision was based on an

---

[4]The day after Carroll's trial began, Banks decided to withdraw his guilty plea and assert his right of self incrimination. (Doc. 13-10, p. 7).

<s>Case 3:05-cv-00692-JMM-EB   Document 18   Filed 03/30/06   Page 11 of 17</s>

unreasonable application of the facts in light of the evidence presented at trial. Carroll has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999). Habeas relief on this ground will therefore be denied.

2. *Prosecutorial Misconduct*

"The Supreme Court has established that the inquiry on federal habeas review when analyzing whether the prosecutor's comments to the jury[,] is whether the comments 'so infect[ed] the trial with unfairness, as to make the resulting conviction a denial of due process.'" Alexander v. Shannon, No. 05-1651, 2006 WL 167449, at *4 (3d Cir. Jan. 24, 2006) (citing Greer v. Miller, 483 U.S. 756, 765 (1987)) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986)). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 108 (3d Cir. 2001).

Carroll argues that he is entitled to relief because during closing argument the prosecutor misled the jury into believing that there was not a deal between the prosecution and Latonya Banks concerning the testimony she presented at trial. The prosecutor stated the following:

> The Commonwealth of Pennsylvania did buy [Ms. Banks] a plane ticket [so

11

> that she could appear to testify at trial]. The Commonwealth did do that. Commonwealth of Pennsylvania also put her up in the Ramada Hotel for two nights while she was in town [to testify]. Yeah, we did that so that you could hear what she had to say. *For that Defendant to in any way say or suggest that there was any kind of deal with Latonya Banks is out and out false, untrue, wrong.* [Emphasis added by Superior Court].

(Doc. 13-10, p. 9). In support of his argument, Carroll also cites the following exchange between his attorney and Latonya Banks:

> Defense counsel -- Miss Banks, you had some involvement in this robbery. You knew of it, and you accepted some of the fruits of the robbery. Have you been arrested in this case?
>
> Latonya Banks - - No, I have not.
>
> Defense counsel - Have you had any charges?
>
> Latonya Banks - - I have not been charged as of this point.
>
> Defense counsel - - I'm also asking you, did the government make any deals with you to come in here and testify?
>
> Latonya Banks - - No.

(Doc. 1-2, p. 15) (citing N.T. 9/3/97, p. 313). Carroll concedes that there is no written agreement, but argues that "it cannot be disputed, nor denied that the deal between the prosecution and Ms. Banks came in the form of: 1) Ms. Banks would not be charged in this robbery, and 2) the prosecution would help Ms. Banks get her children back." (Doc. 1-2, p. 16).

This issue was considered on direct appeal. At that time, Carroll conceded that there was nothing on the record indicating that Banks was getting a deal. (Doc. 13-10, pp. 9, 10). In relying on case law holding that "[a] new trial is required when the effect [of the

12

comments] would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant so that they could not weigh the evidence objectively and render a true verdict" the court concluded that "[s]ince Appellant is admitting that his claim regarding a deal between the Commonwealth and Ms. Banks is mere conjecture, and that there is no evidence in the record regarding any agreement between the aforementioned, we do not find that the prosecutor committed prosecutorial misconduct when he stated in closing argument that there was no agreement between the Commonwealth and Ms. Banks." (Doc. 13-10, p. 10) (citing Commonwealth v. Sheppard, 648 A.2d 563 (Pa. Super. 1994); Commonwealth v. Jubilee, 589 A.2d 1112 (1991); Commonwealth v. Morales, 549 Pa. 400 (1997)).

Review of the evidence supports the state court's conclusion that the prosecutor did not commit prosecutorial misconduct when he stated that there was no agreement between the Commonwealth and Banks because there is no evidence of record of such an agreement. Consequently, the court cannot find that this decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. See Matteo, 171 F.3d at 891. The law relied upon by the superior court in reaching its holding was in accordance with Supreme Court precedent. There is nothing to suggest that this law was applied unreasonably, or that the decision was based on an unreasonable application of the facts. Accordingly, habeas relief on this ground will be denied.

3. *Evidentiary Ruling*

Carroll claims that his constitutional rights were violated when the state courts improperly admitted inflammatory photographs into evidence. Respondent argues that this

13

claim amounts to a challenge under the evidentiary rules of Pennsylvania law. The court agrees. The superior court included the following quotes from pertinent case law when it considered the issue on direct appeal:

> [T]he admission of evidence is a matter vested in the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion.
>
> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Relevant evidence is usually probative. However, to be admissible its probabative value must outweigh its prejudicial effect.
>
> (Doc. 13-10, pp. 5-6) (quoting Commonwealth v. Russell, 665 A.2d 1239, 1245 (1995).
>
> The admission . . . of photographs is a matter within the discretion of the trial judge.
>
> We will reverse the decision of the court below to admit the photograph into evidence only upon an abuse of discretion. We will find an abuse of discretion only when the essential evidentiary value of the photograph is clearly outweighed by the inflammatory effect the picture will have upon the minds and passions of the jurors.
>
> (Id.) (quoting Commonwealth v. Legares, 709 A.2d 922 (Pa. Super. 1998).

The superior court noted that Carroll had offered no legal authority in support of his claim that the photographs were inflammatory. Further, the court concluded that the photographs at issue were highly relevant since they depicted Carroll wearing items he wore during the robbery, and holding guns and money taken during the robbery. Alternatively, the court concluded that even if the photographs were found to be inflammatory, "the essential

evidentiary value of the photographs was not clearly outweighed by the inflammatory effect that the photographs could have had on the jury." (Doc. 13-10, p. 6) ( citing Legares, supra.)

This claim is simply not cognizable in a federal habeas proceeding because it implicates a violation of state evidentiary rules, not federal law. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004). When Carroll presented his claim on direct appeal, he did not claim that the state's evidentiary rulings violated his constitutional due process and equal protection rights, as he does here. He presented the ground solely as a state evidentiary challenge. (Doc. 13-5, pp. 11-15). The specific issue presented was that "[t]he court abused its discretion by admitting photographs of the defendant holding guns, money, illicit drugs and alcohol." (Doc. 13-10, p. 4) (quoting Appellant's Brief at p. 8 (Doc. 13-5, p. 11)). He cited to no federal law and the analysis applied by the state courts in deciding his claim was based upon state evidentiary case law. Hence, the issue is not a proper subject for federal habeas review. See Johnson v. Rosemeyer, 117 F.3d 104, 109; see also Geschwendt v. Ryan, 967 F. 2d 877, 888-89 (3d Cir. 1992); Hawkins v. Carroll, No. 03-1165-KAJ, 2005 WL 3336538 at *3 (D. Del. Dec. 8, 2005) (finding a violation of state evidentiary law is not cognizable in a federal habeas proceeding); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 514 (D. Del. 2003) (same).

IV. Conclusion.

Carroll failed to present to Pennsylvania's highest court the claim that the courts "allowed an innocent man be found guilty of crimes the Commonwealth knows he did not commit." Procedural rules bar him from pursuing this issue in state court. He has therefore procedurally defaulted this claim. He has not demonstrated cause for or prejudice by the default. This claim will be denied.

With regard to Carroll's ineffective assistance of counsel and prosecutorial misconduct claims, there is nothing to suggest that the laws were applied unreasonably, or that the decisions were based on unreasonable application of the facts in the case. Accordingly, habeas relief on this ground will be denied.

Carroll's claim that the trial court erred by admitting photographs into evidence implicates a violation of state evidentiary rules, not federal law. It is therefore not cognizable in a federal habeas proceeding.

An appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY CARROLL,       Petitioner, | : : : | CIVIL NO. 3:CV-05-0692 |
| | : | (Judge Munley) |
| v. | : : | |
| DAVID DIGUGLIELMO, ET AL.,       Respondents | : : | |

## ORDER

AND NOW, to wit this 30th day of March 2006, upon consideration of the petition for writ of habeas corpus (Doc. 1) and in accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1. The petition for writ of habeas corpus is DENIED.

2. A certificate of appealability is DENIED. See 28 U.S.C. § 2253(c).

3. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court